■ INDEMNITY INSURANCE COMPANY OF NORTH AMERICA et al., Appellants, v MILLER SIGNS ASSOCIATES et al., Respondents. [656 NYS2d 632] —Order, Supreme Court, New York County (Walter Schackman, J.), entered November 2, 1995, which granted plaintiffs summary judgment only to the extent of dismissing defendants' third, fourth, fifth and sixth counterclaims, unanimously modified, on the law, the motion is additionally granted to the extent of dismissing defendants' remaining counterclaims and awarding plaintiffs judgment on the issue of liability, and otherwise affirmed, with costs to plaintiffs.

Defendant Miller Signs contracted with the City to build and maintain 2,500 bus stop shelters, in exchange for the right to sell advertising on these structures. When the contractor defaulted, the City looked to the three surety plaintiffs, which had furnished performance bonds. Instead of paying on the bonds, these plaintiffs exercised their option to pay the assessed penalties and take an assignment of the contract, after which they subcontracted with the corporate plaintiffs (New York Shelter Media and New York Subways Advertising Co.) to complete the work. Plaintiffs then sued to enjoin defendants from interfering with the new subcontractors' completion of

the work, and to recover reimbursement for the approximately $4.6 million indemnification paid out. Issue was joined to resolve disputes over revenues and expenses during the period surrounding the transition between the two sets of contractors, as well as defendants' claim for compensation for the 782 shelters it did construct. Some of those disputes were resolved on a prior appeal (181 AD2d 587, *lv dismissed* 80 NY2d 826), and in the uncontested portion of the IAS order now under review. What remains at issue on the instant appeal is disposition of the balance (seventh through eleventh) of defendants' counterclaims, as well as plaintiffs' main claim for judgment.

The indemnity agreement clearly provides for reimbursement to the surety plaintiffs for "losses and/or expenses of whatsoever kind or nature" by reason of failure to perform on the insured contract. Defendants' default entitles plaintiffs to summary judgment on the issue of liability, with the amount of recovery to be determined upon an assessment of damages.

The last four counterclaims allege unjust enrichment in interfering with defendants' collateral security, pre-default revenues, post-default service compensation, and ownership of the 782 bus shelters they did complete. Defendants have no basis on which to assert their eighth counterclaim (impairment of collateral) because they are neither parties to, nor beneficiaries under, the present contract. Similarly, their (ninth) counterclaim for payment or set-off for pre-default revenues was relinquished upon assignment of their rights to the surety plaintiffs under the clear terms of the indemnification agreement. As to the tenth and eleventh counterclaims (compensation for post-default entitlements and for the 782 bus shelters built by defendants), these points were raised and rejected on the prior appeal (*see,* 181 AD2d, *supra,* at 588).

The seventh counterclaim refers to an administrative fee of $300,000 which the plaintiff subcontractors agreed to pay to the plaintiff sureties in consideration for the subcontract. The subcontractors reimbursed the sureties for all of defendants' penalty obligations, presumably out of a $4 million letter of credit the subcontractors had agreed to furnish to the sureties to cover such contingencies. (This reimbursement is a major component of plaintiffs' $4.6 million claim, at least with regard to the subcontractors.) Defendants allege, in effect, that the $300,000 payment should be a set-off against this claim because the sureties have already recovered that amount. But this allegation is misplaced because defendants had no interest whatsoever in an administrative fee negotiated between the parties to the subcontract. That $300,000 was consideration for letting

the subcontract, rather than part of any "recovery" by the sureties.

Accordingly, summary judgment should be granted to plaintiffs on all remaining claims and counterclaims. Concur— Murphy, P. J., Wallach, Rubin and Williams, JJ.